**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HUNTER WISE COMMODITIES, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 1:12-cv-07656 ) |
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) |
| Defendant. | ) ) ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Hunter Wise Commodities, LLC ("HWC"), by and through its undersigned attorneys, bring this Complaint for Declaratory Relief against Defendant, United States Commodity Futures Trading Commission ("CFTC" or the "Commission") and allege and state the following:

**SUMMARY OF ACTION**

1. This is an action concerning proper interpretation of the statutory requirement of "actual delivery" for purposes of determining whether a purchase or sale of a physical commodity that is financed by a third-party is subject to the "Retail commodity transactions" provisions of Section 2(c)(2)(D) of the Commodity Exchange Act, 7 U.S.C. § 2(c)(2)(D) (the "Act" or "CEA").

2. Defendant has issued a final determination that "actual delivery" pursuant to the terms of Section 2(c)(2)(D) of the Act requires a physical delivery of the purchased commodity

into the possession of the buyer or a transfer of the commodity into the possession of a third-party depository that is not affiliated with the seller of the commodity.

3. Defendant's construction is wrong and conflicts with the terms of the underlying statute, the intent of Congress in passing the statute, state law requirements under the Uniform Commercial Code as embodied in analogous state statutes and commercial practices and realities in the marketplace for physical commodities.

4. HWC has suffered, is suffering and will suffer in the future, significant financial harm as a result of Defendant's improper interpretation of the term "actual delivery."

5. Plaintiff brings this suit for a declaratory judgment pursuant to Federal Rule of Civil Procedure 57, 28 U.S.C. §§2201 and 2202 and 5 U.S.C. §§ 701 *et seq*.

## PARTIES

6. HWC is a limited liability company organized and existing under the laws of the state of Nevada with its principal place of business in Las Vegas, Nevada. HWC is a wholesale dealer in precious and industrial metals doing business throughout the United States.

7. Defendant CFTC is an independent agency of the United States of America. The CFTC has exclusive jurisdiction to enforce the CEA and its regulation of transactions involving swaps or contracts of sale of a commodity for future delivery and specifically listed leverage transactions except as otherwise provided for in the Wall Street Transparency and Accountability Act of 2010 ("Dodd-Frank").

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 as well as Sections 702 and 703 of the Administrative Procedures Act, 5 U.S.C. §§ 702 and 703, in that Plaintiff challenges a final agency action of the CFTC.

9. An actual and justiciable controversy exists between the parties. The CFTC's final determination regarding the meaning and enforceability of the term "actual delivery" and consequential application of Section 2(c)(2)(D) of the Act based on that definition caused, and continues to cause, injury to HWC's day-to-day business. HWC challenges the CFTC's interpretation of United States statutes and CFTC regulations.

10. This action seeks declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. §2201.

11. Venue is also proper because HWC has been and continues to be subject to an investigation by the staff of Defendant relying in whole or in part on Defendant's interpretation of Section 2(c)(2)(D) of the Act. This investigation is conducted by the staff of the CFTC located in its Central Regional office in Chicago. HWC's responses to Defendant's subpoenas are returnable to the Chicago office and HWC witnesses have been required to appear for deposition in Defendant's Chicago office.

## BACKGROUND FACTS

12. HWC transacts only with precious and industrial metals dealers that have the ability to deliver and accept delivery of precious or industrial metals in connection with their businesses or counterparties who are eligible contract participants as defined in the Act ("counterparty-dealers"). The contracts between HWC and its counterparty-dealers create

3

enforceable obligations to deliver. HWC provides a two way trading market, enabling its counterparty-dealers to buy from or sell to HWC precious or industrial metals at a price negotiated at arms-length with HWC.

13. Ownership and economic control of the precious and industrial metal bought or sold passes to the buyer when the transaction is reflected on the records of HWC, subject to any security interests held by seller, HWC, or any other entity (including HWC affiliates) in connection with the financing of any purchase, administrative or warehousing or depository costs.

14. A counterparty-dealer of HWC may take physical possession of all precious and industrial metals purchased at any time, provided, however, if the inventory is being held pursuant to a financing agreement then the buyer holds title and economic interest subject to the lien and may only take possession upon full payment of all amounts due and owing to the holder of the security interest. The security interest created by the financial agreements typically is perfected by possession of the metal by the financing party.

15. HWC obtains metal to satisfy its obligations to its counterparty-dealers and/or for its own account in a similar manner from other wholesale dealers of precious and/or industrial metals.

16. Metal associated with these purchases typically is held in a depository/warehouse for safekeeping and storage. It is rarely transferred from one depository to another due to security reasons, costs of transportation and to avoid the costs of weighing and assaying the quality of the metal to assure the volume and quality of the metal meets the terms of the contract between the parties.

17. Precious and industrial metals, as well as other commodities sold in fungible form, e.g. agricultural and energy commodities, have been sold in this manner consistent with the provisions of the Uniform Commercial Code as enacted in the respective states for many years.

18. Section (2)(c)(2)(D) of the Act purports to bring within the requirements of the Act "*any agreement, contract or transaction in any commodity . . . [that is] entered into on a leveraged basis, or financed by the offeror, the counterparty or a person acting in concert with the offeror or counterparty on a similar basis*" that is entered with a person who is not an eligible contract participant. Section (2)(c)(2)(D), however, excludes from coverage under Section (2)(c)(2)(D) a contract of sale that:

> (aa) results in actual delivery within 28 days or such other longer period as the Commission may determine by rule or regulation based upon the typical commercial practice in cash or spot markets for the commodity involved; or

> (bb) creates an enforceable obligation to deliver between a seller and a buyer that have the ability to deliver and accept delivery, respectively, in connection with the line of business of the seller and buyer

7 U.S.C. § 2(c)(2)(D)(ii)(III)(aa); 7 U.S.C. § 2(c)(2)(D)(ii)(III)(bb).

19. On December 14, 2011, Defendant promulgated its interpretation of the meaning of "actual delivery" as used in Section (2)(c)(2)(D) in an interpretative notice. *See* 76 Fed. Reg. 77,760 (Dec. 14, 2011) ("Actual Delivery Rule"). The CFTC's interpretation expressly provides that physical transfer of possession as well as transfer of title must occur within twenty-eight (28) days of purchase in order to meet the "actual delivery" requirement of the statute and qualify for exemption from prosecution under the Act. For example, the CFTC explains,

> *"[a]ctual delivery will have occurred if, within 28 days, the seller has physically delivered the entire quantity of the commodity purchased by the buyer, including any*

*portion of the purchase made using leverage, margin, or financing, into the possession of the buyer and has transferred title to that quantity of the commodity to the buyer."*

76 Fed. Reg. at 77,672.

20. Failure to meet this "actual delivery" requirement and failure to comply with the provisions of the Act subjects parties, including HWC and its counterparty-dealers to enforcement action and penalties by the Commission.

21. The Actual Delivery Rule is thus a final determination by the CFTC that exposes HWC to enforcement action by the Commission and is thus ripe for decision by this Court.

22. The CFTC's interpretation of "actual delivery", in particular the requirement of physical transfer of metal to a purchaser irrespective of any superior securities interest held by the seller or an affiliated or independent financing entity, conflicts with multiple sections of Article 2 of the Uniform Commercial Code detailing the manner in which the sale of fungible commodities is consummated and security interests in those commodities are perfected and preserved.

23. For example, Section 2-401(3) (b) of the Uniform Commercial Code, provides that if the goods to be purchased are identified at the time of contracting and no documents of title are to be delivered, title passes at the time and place of contracting. U.C.C. § 2-401(3)(b). Under the UCC "the general policy is to resolve all doubts in favor of identification [occurring]." *See,* U.C.C. § 2-501 cmt. 2.

24. Further, an undivided share in an identified bulk of fungible goods is sufficiently identified to be sold although the quantity of the bulk is not determined, and any agreed proportion of a fungible bulk agreed upon by weight or number or any other measure is enough to effectuate a sale. *See,* U.C.C. § 2-105(4). As stated in the official comment, the U.C.C. expressly provides:

6

> *Undivided shares in an identified fungible bulk, such as grain in an elevator or oil in a storage tank, can be sold. The mere making of the contract with reference to an undivided share in an identified fungible bulk is enough under [Section 2-501(a)] to effect an identification if there is no explicit agreement otherwise.*

U.C.C. § 2-501 cmt. 5.

25. Thus, under the terms of the Uniform Commercial Code, the basis on which the typical commercial practice in cash or spot markets for precious and industrial metals has been developed and conducted for more than thirty years, actual delivery occurs at the time of contracting. The CFTC's attempt to define "actual delivery," as the functional equivalent of "physical delivery", also conflicts with typical commercial practice in cash or spot markets for the commodity involved and introduces unjustifiable complexity, risk of loss and additional cost to the purchaser of precious and industrial metals and other fungible commodities sold on a like basis.

26. Nothing in the statute or in the legislative history of Dodd-Frank authorizes the CFTC to ignore state law as embodied in the UCC, to impose additional costs and risks of loss on purchasers of fungible commodities or to bring within the coverage of the Act buyers or sellers of precious or industrial metals or other fungible commodities whose sales practices conform with the requirements for delivery under the Uniform Commercial Code as enacted in the several states.

27. The CFTC's Actual Delivery Rule and its actions have had, and continue to have, substantial detrimental effects on the day-to-day business of HWC and puts the well managed activity of maintaining a balanced inventory in jeopardy.

28. In that regard on or about July 11, 2012, Defendant's enforcement staff advised counsel for HWC that it would recommend an enforcement action be initiated against HWC

based on alleged violations arising from the fact that HWC and its affiliates do not provide "actual delivery" to its counterparty-dealers as the Commission has defined that requirement in its interpretive notice.

29.     Declaratory relief will resolve this controversy and is necessary to eliminate the immediate effect the CFTC's pronouncements have had on HWC's current operations, including investments in its accounting and operations systems as well as capital investments in establishing a brand identity that is synonymous with integrity and reliability.

## VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT—
## AGENCY ACTION IN EXCESS OF STATUTORY JURISDICTION, AUTHORITY, OR LIMITATIONS, OR SHORT OF STATUTORY RIGHT

30.     HWC repeats and re-alleges paragraphs 1 through 29.

31.     Defendant CFTC is an "agency" subject to the judicial review provisions of the Administrative Procedures Act, 5 U.S.C. §701 (b).

32.      A reviewing court shall hold unlawful and set aside agency action found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

33.     The CFTC has exceeded its statutory jurisdiction under Sections 4a, 4b, 6c1, and 4d of the CEA by attempting to regulate the purchase and sale of physical commodities (a power Congress has not granted) by inappropriately trying to characterize such transactions as futures contracts or leveraged transactions.  By doing so, the CFTC is attempting to regulate a transaction that Congress expressly refused to bring within the Agency's jurisdiction.

34.     The CFTC's interpretation of "actual delivery" as promulgated in 76 Fed. Reg. 77,670 and overt actions taken against HWC in line with that interpretation - including

requiring HWC to respond to several subpoenas and indicating an intent to proceed with an enforcement action against HWC - constitute a consummation of the CFTC's decisionmaking process regarding prosecutions under the Act.

35. As a result of the CFTC's interpretation of "actual delivery", HWC has suffered, continues to suffer and will suffer in the future legal consequences and injuries (including economic and reputational injury) to its day-to-day business.

36. The CFTC's action is a final determination.

37. An actual and justiciable controversy exists between the parties, for which there exists no adequate remedy other than that requested herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asks this Honorable Court to:

a. Declare the CFTC's interpretation of "actual delivery" as promulgated in 76 Fed. Reg. 77670 void as it is contrary to typical commercial practice in cash or spot markets for the commodity involved and without statutory authority within 5 U.S.C. § 706(2)(C).

b. Vacate and set aside 76 Fed. Reg. 77,760 in its entirety.

c. Enjoin the CFTC from taking action pursuant to 76 Fed. Reg. 77,760.

d. All other relief the court deems appropriate.

Dated:   September 25, 2012                    Respectfully Submitted,

/s/ Jay Bruce Grossman
Jay Bruce Grossman (FL Bar #: 0147036)
JBG@JBGrossmanpa.com
J.B. Grossman, P.A.
200 East Las Olas Boulevard, Suite 1660
Fort Lauderdale, FL  33301
Telephone:  (954) 452-1118
Facsimile:  (954) 916-4448
Counsel for Plaintiffs

Timothy J. Carey
Joanna Collias
Winston & Strawn LLP
35 West Wacker Drive
Suite 3700
Chicago, Illinois 60601
Telephone (312) 558-5600
Facsimile:  (312) 558-5700
tjcarey@winston.com
jcollias@winston.com
Local Counsel for Plaintiffs